KB PARTNERS I, L.P., Individual-
ly and on Behalf of All Others
Similarly Situated, Plaintiff,

v.

Remi BARBIER, Pain Therapeutics,
Inc., Nadav Friedmann, and Peter
Roddy, Defendants.

Case No. A–11–CA–1034–SS.

United States District Court,
W.D. Texas,
Austin Division.

Nov. 20, 2012.

Jason S. Cowart, Jeremy A. Lieberman, Patrick V. Dahlstrom, Tamar A. Weinrib, Pomerantz, Grossman, Hufford, Dahlstrom & Gross, LLP, New York, NY, Sammy Ford, IV, Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, Houston, TX, for Plaintiff.

Joshua I. Schiller, William S. Ohlemeyer, Boies, Schiller & Flexner, LLP, New York, NY, Mary Schaerdel Dietz, Cox Smith Matthews Incorporated, Austin, TX, Nathan A. Holcomb, Boies, Schiller & Flexner, LLP, Amonk, NY, for Defendants.

*ORDER*

SAM SPARKS, District Judge.

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Remi Barbier, Pain Therapeutics, Inc. (PTI), Nadav Friedmann, and Peter Roddy's [1] Motion to Dismiss [# 71], and Plaintiff KB Partners I, L.P. (KB)'s Response [# 72] thereto. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and order DENYING the motion to dismiss.

### Background

This is a class action securities fraud suit alleging misconduct related to PTI's unsuccessful attempts to secure FDA approval for its new pain medication, REMOXY. PTI partnered with King Pharmaceutical, Inc., later acquired by Pfizer, Inc., to develop REMOXY and prepare the drug's FDA application. The FDA rejected the first REMOXY New Drug Application (NDA), citing problems with the drug's stability data. PTI, King, and Pfizer proceeded to develop and submit a second NDA, all while allegedly misleading investors about the problems REMOXY faced. The FDA rejected REMOXY's second NDA, PTI's share prices plummeted, and this lawsuit followed.

The factual background was extensively detailed in this Court's previous order granting Defendants' first motion to dismiss. Order of Sept. 26, 2012 [# 68]. KB's prior pleading, its First Amended Complaint [# 48], failed to adequately plead scienter as required by the Private Securities Litigation Reform Act (PSLRA). *See* 15 U.S.C. § 78u–4(b). KB has since filed a Second Amended Complaint [# 70], adding the following factual

---

1. Grant L. Schoenhard, previously named as a party, has not been named in the Second Amended Complaint, and has therefore been removed as a party.

allegations, which are taken as true for the purposes of Defendants' motion to dismiss.

According to Confidential Witness Three (CW3), the executive assistant to Barbier and Friedmann from 1999 until September 2011, both Barbier and Friedmann received updates from King's CEO, Brian Markenson, pursuant to the Collaboration Agreement. Second Am. Compl. [# 70] ¶ 38. Confidential Witness Four (CW4), the Director of Formulations and Pharmaceutical Development at King and then Pfizer from 2003 until December 2011, alleges CW4's superiors at King had frequent conversations with top executives at PTI, including Barbier, Friedmann, and Roddy, about stability issues throughout the REMOXY retesting process. *Id.* ¶ 40.

Confidential Witness Six (CW6), the Director of Finance at PTI from 2000 until September 2011, alleges Barbier and Friedmann were present at meetings regarding the REMOXY resubmission process with King representatives. *Id.* ¶ 44. Also present at these meetings were Mike Zamloot, PTI's Vice President of Technical Operations, and Mike Marsman, PTI's Director of Regulatory Affairs. *Id.* Confidential Witness Seven (CW7), the Vice President of Pharmaceutical Development at King and then Pfizer from 1992 until November 2011, alleges King (and, later, Pfizer) had a "legal obligation" to provide PTI with quarterly updates on any work done on REMOXY or the NDA. *Id.* ¶ 45. According to CW7, the top executives at PTI were the only ones who met with top executives from King and Pfizer regarding the REMOXY resubmission process. *Id.*

Finally, the Second Amended Complaint alleges Roddy spoke about REMOXY at the "Needham & Company Healthcare Conference," where Roddy discussed REMOXY's second NDA. *Id.* ¶ 49. Specifically, Roddy stated "the FDA asked for additional stability data on REMOXY's novel formulation. That and other information

was submitted to the FDA in December." *Id.*

This Court granted Defendants' previous motion to dismiss because KB failed to adequately plead scienter as required by the PSLRA. KB filed its Second Amended Complaint to address those scienter allegations. Defendants have again moved to dismiss. The only issue raised by the parties is scienter.

## Legal Standards

### I. 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant*

*Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

## II. Securities Exchange Act § 10(b) Pleading Requirements

Section 10(b) of the Securities Exchange Act of 1934 empowers the SEC to promulgate rules to prevent manipulative or deceptive practices in the sale or purchase of securities. 15 U.S.C. § 78j(b). Under this grant of authority, the SEC issued Rule 10b–5, which makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

██ The Fifth Circuit has held the elements of a claim under § 10(b) are: (1) a misrepresentation or omission; (2) of a material fact; (3) in connection with the purchase or sale of a security; (4) scienter by the defendant; (5) justifiable reliance by the plaintiff; (6) damages; and (7) proximate cause. *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 865 (5th Cir.2003). To establish scienter, a plaintiff must show the defendant intended to deceive, defraud, or manipulate, or that the defendant acted with severe recklessness. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 251 (5th Cir.2009). Severe recklessness is limited to "highly unreasonable omissions or misrepresentations" involving an "extreme departure from the standards of ordinary care." *Nathenson v. Zonagen, Inc.,* 267 F.3d 400, 408 (5th Cir.2001).

Both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA) impose a heightened pleading requirement on § 10(b) claims. FED.R.CIV.P. 9(b); 15 U.S.C. § 78u–4(b). Rule 9(b) requires plaintiffs alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." FED.R.CIV.P. 9(b). The PSLRA dictates a more rigorous pleading standard for private securities fraud actions in two ways. First, in any such action alleging the defendant made an untrue statement of material fact or a misleading omission:

[T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u–4(b). Second, for claims under which the plaintiff must prove a particular state of mind to recover:

[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a *strong inference*

that the defendant acted with the required state of mind.

*Id.* (emphasis added). Based on the elements of a § 10(b) claim described above, it is clear that § 10(b) claims are subject to both of these requirements of the PSLRA.

## III. "Strong Inference" of Scienter Requirement

■ The United States Supreme Court has outlined a framework for courts to use in analyzing motions to dismiss § 10(b) complaints for failing to establish a "strong inference" of scienter. First, as in any other motion to dismiss, the court accepts all factual allegations in the complaint as true. Second, courts must consider the entire complaint, other sources typically examined in a 12(b)(6) motion, sources incorporated by reference into the complaint, and matters of which a court may take judicial notice. Third, in determining whether the pleaded facts give rise to a "strong" inference of scienter, as required by the PSLRA, a court should consider all of the facts alleged, taken collectively, and should also take into account plausible opposing inferences. *Tellabs,* 551 U.S. at 322–23, 127 S.Ct. 2499. The inference need not be irrefutable, nor even the most compelling of all competing inferences, but must be strong in light of other inferences. *Id.* at 324, 127 S.Ct. 2499. Ultimately, a complaint will only survive if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

To survive Defendants' motion to dismiss, Plaintiffs must plead facts sufficient to create a "strong inference" that each Defendant intended to deceive, defraud, or manipulate, or the Defendants acted with severe recklessness. 15 U.S.C. § 78u–4(b); *Lormand,* 565 F.3d at 251. In assessing whether Plaintiffs have created such an inference, the Court will look at the complaint as a whole, all relevant information from other appropriate sources, and will consider plausible opposing inferences. *Tellabs,* 551 U.S. at 322–23, 127 S.Ct. 2499. The Court will then ask whether "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324, 127 S.Ct. 2499.

### Analysis

In the Fifth Circuit, "scienter generally encompasses severe recklessness." *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 697 (5th Cir.2005) (citing *Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 961–62 (5th Cir.1981) (en banc)). "Thus, a securities fraud plaintiff must prove that the defendant either consciously misbehaved . . . or was so severely reckless that it demonstrates that the defendant must have been aware of the danger of misleading the investing public." *Id.; see also Tellabs,* 551 U.S. at 319, 127 S.Ct. 2499.

■ Scienter must be specifically shown for each defendant. As the Fifth Circuit explained, "the PSLRA requires the plaintiffs to distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 365 (5th Cir.2004) (internal quotation marks omitted). Corporate officers may be linked to corporate statements by their signatures on the relevant documents, or by otherwise linking them specifically to the creation of a particular statement. *Id.* "[T]he corporation itself may be treated as making press releases and public statements issued by authorized officers on its behalf, and statements made by its authorized officers to further the interests of the corporation." *Id.* But "corporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of

day-to-day involvement in the corporation's affairs is pleaded." *Id.* A strong inference of scienter "may not rest on the inference that defendants must have been aware of the misstatement based on their positions with the company." *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.,* 537 F.3d 527, 535 (5th Cir.2008) (internal quotation marks and citation omitted).

■ The core problem with KB's First Amended Complaint was its failure to establish the individual defendants had knowledge of REMOXY's stability-testing problems, and therefore may have acted with intent to defraud. The Second Amended Complaint addresses those concerns, and supports an "inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 551 U.S. at 324, 127 S.Ct. 2499.

First, the Second Amended Complaint connects Barbier and Friedmann to the Collaboration Agreement, a key allegation missing from the previous pleading. KB now alleges both Barbier and Friedmann received updates directly from King's CEO pursuant to the Collaboration Agreement. Second Am. Compl. [# 70] ¶ 38. Barbier and Friedmann are also alleged to have attended meetings with both King representatives and Zamloot, an individual this Court previously recognized as someone who likely possessed detailed information about the stability-testing process. *Id.* ¶ 44. More specifically, Zamloot had learned "25% of the REMOXY product tested within the first three months did not meet the stability specifications provided to the FDA." *Id.* ¶ 35. It is at least plausible Zamloot learned of this crucial fact during meetings with King representatives: meetings at which Barbier and Friedmann were present.

Second, corroborating allegations in the Second Amended Complaint make the inference of scienter in this case more compelling. CW4 alleges Barbier, Friedmann, and Roddy "had frequent conversations" with top executives from King regarding specific stability-testing issues. *Id.* ¶ 40. CW7 corroborates this story, alleging the individual defendants "personally participated in the meetings with the top executives at King, and later Pfizer, regarding the REMOXY retesting and resubmission process." *Id.* ¶ 45.[2]

Third, the Second Amended Complaint corroborates the allegation the individual defendants were kept informed about the specific stability-related challenges facing REMOXY, and therefore acted with scienter. Barbier, for example, discussed the resubmission process at a "Bank of America Merrill Lynch Health Care Conference," stating: "[The FDA] did ask us for more detailed stability work, which was done in the interim between 2008 and 2010." *Id.* ¶ 54. Barbier continued: "I believe the CEO of Pfizer did affirm that it is not if REMOXY gets approved, but when REMOXY gets approved." *Id.* ¶ 55. Barbier is further alleged to have con-

---

**2.** The Court is aware of its obligation to "discount allegations from confidential sources." *Shaw Grp.,* 537 F.3d at 535. But discount does not mean disregard. Accordingly, the Fifth Circuit has recognized it is appropriate to give some weight to confidential sources when those sources are identified "with sufficient particularity to support the probability that a person in the position occupied by the source ... would possess the information pleaded." *ABC Arbitrage Pls.' Grp. v. Tchu-* *ruk,* 291 F.3d 336, 353 (5th Cir.2002). The confidential witness statements in this case provide sufficient particularity to be afforded some weight. The witnesses themselves are identified as individuals likely to possess the information proffered. Moreover, the confidential witness statements corroborate and explain other factual allegations, rather than serving as the sole basis for drawing the inferences required by *Tellabs.*

firmed, in response to questions, Pfizer's obligation to keep him fully informed with respect to the FDA review process. *Id.* ¶ 56. Roddy made similar comments at the Needham conference, stating "the FDA asked for additional stability data on REMOXY's novel formulation. That and other information was submitted to the FDA in December." *Id.* ¶ 49.

Defendants argue the new pleading merely repeats the mistakes of the previous complaint, relying on the individual defendants' positions within the company to establish their knowledge. The Court disagrees. Unlike the First Amended Complaint, which did advance a "top executives must have known" theory, the Second Amended Complaint places the individual defendants in multiple conversations regarding REMOXY's resubmission with King and Pfizer executives. Defendants contend the existence of such meetings does not prove any information related to stability was provided to the individual defendants. It may not. But Barbier and Roddy's own words suggest they discussed, and certainly were aware of, stability problems during the resubmission process, thereby satisfying the plausibility requirement.

As *Tellabs* instructs, the Court must consider the competing inferences capable of being drawn from the facts alleged in the complaint. One such inference, and the one proffered by KB, suggests the individual defendants were frequently and fully informed by representatives from King and Pfizer with respect to RE-MOXY's second NDA and the methods used to address the stability concerns raised by the FDA in its rejection. Alternatively, KB suggests the individual defendants were at least severely reckless in making repeated, specific statements about the REMOXY resubmission without detailed knowledge regarding how the FDA's stability concerns had been resolved. De-fendants do not offer any competing inferences, but it is nevertheless possible the individual defendants, despite the frequent briefings, remained ignorant of key specifics, or were themselves misled by King and Pfizer into believing the stability problems had been resolved. The Court cannot, and need not, delve into the truth of any of these theories just yet. The inference suggested by KB is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324, 127 S.Ct. 2499.

### Conclusion

It is not yet this Court's obligation to conclusively determine what happened in this good-drug-gone-bad story. For purposes of the motion to dismiss, the Court must accept the factual allegations in the Second Amended Complaint as true, and consider the competing inferences capable of being drawn from those allegations. Based on the new allegations in the Second Amended Complaint, it is at least plausible the individual defendants possessed critical information concerning RE-MOXY's resubmission, and either intentionally or recklessly deceived investors. Defendants' motion to dismiss is therefore DENIED.

Accordingly,

IT IS ORDERED that Defendants Remi Barbier, Pain Therapeutics, Inc., Nadav Friedmann, and Peter Roddy's Motion to Dismiss [# 71] is DENIED.